IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
ST. THOMAS/ST. JOHN DIVISION

| | | |
|---|---|---|
| TOM CARIVEAU | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 3:24-29 |
| | : | |
| DR. LINDA CALLWOOD, *et al.* | : | |

## MEMORANDUM

KEARNEY, J.                                                                April 17, 2025

A California man held in the St. Thomas Jail as a pretrial detainee in early May 2022 died of complications twelve days later from his disclosed hemophilia. The Jail's medical professionals could not find hospital care or renew his prescription medication, and the necessary pharmacy provider did not provide the requested life-saving medication. The deceased Californian's Personal Representative sued in early May 2024 for damages under the Virgin Islands survival act and wrongful death act claiming the Jail's medical professionals violated the man's civil rights through deliberate indifference and the pharmacy professionals acted negligently. The Jail's medical professionals and outside pharmacy move for judgment on the pleadings on the wrongful death act claims after we dismissed the survival act claims several weeks ago. We accept the plausible pleaded facts as true at this stage of the case.

The Virgin Islands Legislature requires claims brought on behalf of the decedent which we call survival actions to be filed within one year of the death. But a personal representative can bring a wrongful death claim on the estate's behalf (for identified out-of-pocket expenses or lost income) and on behalf of identified beneficiaries within two years of death. We today address whether the personal representative's wrongful death claims on behalf of an estate are barred by the one-year statute of limitations applying to survival actions and whether a personal

representative can proceed into discovery on a wrongful death deliberate indifference civil rights claim.

We find no reason at this stage to enter judgment dismissing the personal representative's wrongful death claims on behalf of the estate against either the pharmacy professionals in negligence or against the Jail's medical professionals under the civil rights laws. The personal representative may not recover punitive damages in a wrongful death negligence claim under the Virgin Islands law. He also cannot proceed on behalf of unidentified beneficiaries or recover expenses or damages beyond those permitted by the Virgin Islands Legislature or later petition for reasonable attorney's fees and costs if he prevails on his deliberate indifference claim. We grant in part and deny in part the motions for judgment on the pleadings.

### I.  Alleged facts

Craig Vanausdal planned to leave St. Thomas on May 4, 2022 on a flight home to California.[1] United States Customs Officers and/or the Virgin Islands Police Department arrested Mr. Vanausdal at the St. Thomas airport on an outstanding warrant for a 2004 marijuana arrest in Pennsylvania and took him to the St. Thomas Jail as a pretrial detainee.[2] Mr. Vanausdal told the Jail's intake personnel of his hemophilia requiring medication.[3] Mr. Vanausdal brought expired medication with him for the flight home (assuming he would be home in a few hours) but did not have extra medication with him at the airport to treat his condition.[4]

Mr. Vanausdal remained in the St. Thomas Jail without medication to treat his condition from his arrest at the Cyril E. King Airport on May 4 until the day he died on May 16, 2022.[5] The Virgin Islands officials designated Dr. Linda Callwood and Nurse Welma Freeman-Walter, R.N. as responsible state actors for Mr. Vanausdal's medical care during the twelve-day period he remained in custody at the St. Thomas Jail.[6] Dr. Callwood discarded the expired medicine Mr.

Vanausdal had with him (but could have used), neither Dr. Callwood nor Nurse Freeman-Walter sent him to the hospital for emergency care, and corrections officers did not call for medical assistance when Mr. Vanausdal's condition deteriorated.[7] Accredo, the specialty pharmacy provider of Mr. Vanausdal's hemophilia medication, did not send the necessary medication to St. Thomas despite communicating with Dr. Callwood and Mr. Vanausdal's girlfriend pleading for medication to be sent to St. Thomas.[8] Mr. Vanausdal died in the St. Thomas Jail on May 16, 2022.[9]

Tom Cariveau, as the personal representative of the Estate of Craig Vanausdal, deceased, and purportedly on behalf of unidentified beneficiaries, sued Dr. Callwood, Nurse Freeman-Walter, and Accredo Health Group, Inc. for civil rights violations and negligence arising from the medical care Mr. Vanausdal received while detained in the St. Thomas Jail for twelve days in May 2022. Personal Representative Cariveau first sued on May 4, 2024 and amended his Complaint on May 15, 2024.[10] Personal Representative Cariveau sued "as Personal Representative of the Estate of Craig Vanausdal, Deceased, and on behalf of decedent's beneficiaries," asserting both a survival action and a wrongful death action under Virgin Islands statutes codified at 5 V.I.C. sections 76, 77. Personal Representative Cariveau did not identify the potential beneficiaries of a recovery for wrongful death and their relationship to Mr. Vanausdal as required by the Virgin Islands Legislature.[11] Personal Representative Cariveau asserted common law negligence claims against Accredo, deliberate indifference to Mr. Vanausdal's serious medical needs in violation of the Fourteenth Amendment under 42 U.S.C. § 1983 against Dr. Callwood, Nurse Freeman-Walter, and two John Doe Corrections Officers, and a freestanding "Survival Claim" under the Virgin Islands survival statute codified at 5 V.I.C. section 77.[12]

Accredo, Dr. Callwood, Nurse Freeman-Walter, the Bureau of Corrections Director, and the Governor of the Virgin Islands moved to dismiss the amended Complaint.[13] We denied

Accredo's motion to dismiss the negligence claims asserted against it, denied the motion of Dr. Callwood, Nurse Freeman-Walter, the Director, and the Governor to dismiss the civil rights claims against them, but dismissed the survival claim with prejudice as barred by Virgin Islands' one-year statute of limitations on survival claims since Personal Representative filed the suit approximately two years after Mr. Vanausdal passed away in his St. Thomas Jail cell.[14] We entered a Scheduling Order setting a discovery schedule and allowing Personal Representative Cariveau to amend his complaint.[15]

Personal Representative Cariveau filed a second amended Complaint asserting the same claims but only as against Accredo, Dr. Callwood, Nurse Freeman-Walter, and the John Doe Corrections Officers.[16] Personal Representative Cariveau again brought claims as the "Personal Representative of the Estate of Craig Vanausdal, Deceased, and on behalf of decedent's beneficiaries."[17] Personal Representative Cariveau again did not identify the potential beneficiaries of a recovery for wrongful death and their relationship to Mr. Vanausdal as required by the Virgin Islands Legislature when bringing a wrongful death claim.

## II.  Analysis

Accredo, Dr. Callwood and Nurse Freeman-Walter now move for judgment on the pleadings largely based on our January 31, 2025 Order and Memorandum finding the separate "survival" claim barred by the one-year statute of limitations.  They now argue the Virgin Islands statute of limitations for survival actions bars all claims, including the wrongful death claims, and the wrongful death civil rights action against the medical professionals cannot be maintained as a matter of law.[18]

Both Accredo and Dr. Callwood and Nurse Freeman-Walter primarily argue the claims brought by Personal Representative Cariveau through a ***survival*** action are time barred by the one-

year statute of limitations in 5 V.I.C. § 37(a). Accredo does not read the second amended Complaint as asserting a wrongful death action and instead believes Personal Representative Cariveau attempts to circumvent the one-year statute of limitations for survival actions by "creative[ly] pleading" a wrongful death action. Accredo seeks judgment on the pleadings on both the ordinary negligence and gross negligence claims as time barred. Accredo alternatively argues if we consider the negligence and gross negligence claims as wrongful death claims, we should dismiss the gross negligence claim as insufficiently pleaded and strike the demand for punitive damages if we construe the claims against it under a wrongful death action.[19]

Dr. Callwood and Nurse Freeman-Walker move for judgment on the section 1983 deliberate indifference claim as time barred if asserted as a survival claim. Dr. Callwood and Nurse Freeman-Walker move for judgment on the claims asserted against them through a wrongful death claim arguing the claims are derivative of the time barred survival action and Personal Representative cannot proceed on a wrongful death civil rights claim as a matter of law.

Personal Representative Cariveau opposes the two motions.[20] We view the Personal Representative's pleaded facts and inferences to be drawn from them in the light most favorable to him and we may not grant judgment on the pleadings for Accredo and Dr. Callwood and Nurse Freeman-Walker "unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law."[21] We agree in part as to the inability to seek punitive damages under the wrongful death statute. But the remaining arguments are not persuasive on this preliminary record.

### A. We first distinguish survival actions and wrongful death actions including their statutes of limitations.

Craig Vanausdal died in the St. Thomas Jail in mid-May 2022. So, who has standing to sue for the damages caused by his death? Is the alleged harm (not providing him with prescription medication for his disclosed hemophilia or hospital care, resulting in his death) without a remedy? The answer would have been yes over a hundred years ago under the common law. The United States Supreme Court in 1913 held "[n]othing is better settled than that, at common law, the right of action for an injury to the person is extinguished by the death of the party injured."[22] So, absent some statute, the decedent, his estate, and his beneficiaries could not recover for a death caused by another.[23]

The Virgin Islands Legislature abrogated this common law rule by creating a statute in 1921, amended several times over the years, most recently in 2001, allowing for both a survival action and wrongful death action.[24] The Virgin Islands Legislature allows for a survival action, brought by the decedent's personal representative, after the death of the injured party: "A thing in action arising out of a wrong which results in physical injury to the person or out of a statute imposing liability for such injury shall not abate ... by reason of the death of the person injured or of any other person who owns any such thing in action. When the person entitled to maintain such an action dies before judgment, the damages recoverable for such injury may include loss of earnings and expenses sustained or incurred as a result of the injury may include damages for pain, suffering and disfigurement, or punitive or exemplary damages, or prospective profits or earnings after the date of death. The damages recovered shall form part of the estate of the deceased."[25]

The Virgin Islands Legislature also allows for a wrongful death action where "the death of a person is caused by the wrongful act, negligence, default, or breach of contract or warranty of any person ... and the event would have entitled the person injured to maintain an action and recover damages if death had not ensued, the person ... that would have been liable in damages if

death had not ensued shall be liable for damages as specified in this section notwithstanding the death of the person injured ....”[26] The Virgin Islands Legislature made its intent clear in the first part of the wrongful death statute: “It is the public policy of the Territory to shift the losses resulting when wrongful death occurs from the survivors of the decedent to the wrongdoer” and directed the statute is “remedial and shall be liberally construed.”[27] A wrongful death action “shall be brought by the decedent’s personal representative, **who shall recover for the benefit of the decedent’s survivors and estate all damages**, as specified in this section, caused by the injury resulting in death. When a personal injury to the decedent results in his death, any action for the personal injury shall survive, whether or not filed at the time of death, and shall not abate.”[28]

Lawyers may confuse the two claims following a death. The claims are not the same. They are meant to “redress different wrongs” and “benefit different parties.”[29] The survival action “merely *continues* in existence the injured person’s claim after death as an asset of his estate, while the usual wrongful death statute creates a *new* cause of action.”[30] A wrongful death action is brought by the decedent’s personal representative “who shall recover for the benefit of the decedent’s survivors and estate.”[31] Chief Judge Molloy (then serving on the Virgin Islands’ Superior Court) ably summarized the differences between the two actions: “the history of wrongful death and survival actions makes clear that when someone dies two things happen. First, any personal injury claims the person may have had abate unless there is authority extending the life of those claims. Second, if a person’s death was caused by or resulted from someone else’s actions or failure to act, then that person’s survivors can only recover if authority creates a cause of action for wrongful death. And while wrongful death is a new claim—with its own elements that must be alleged in a complaint and proven at trial—a survival claim is not really a claim. It is merely a vehicle for pursuing someone else’s claims.”[32]

So, when Mr. Vanausdal died on May 16, 2022, Virgin Islands law allowed Personal Representative Cariveau to timely bring two types of action: (1) a survival action under section 77 on behalf of Mr. Vanausdal to assert claims Mr. Vanausdal had before his death; and (2) a wrongful death action under section 76 on behalf of Mr. Vanausdal's survivors for their loss by reason of his death and on behalf of Mr. Vanausdal's estate for its loss. Personal Representative Cariveau did not, in three iterations of his complaint, identify Mr. Vanausdal's "survivors" or "all potential beneficiaries" or their relationship to him as required by Virgin Islands statute.[33]

But Personal Representative Cariveau needed to move promptly. The Virgin Islands Legislature defines different statutes of limitations for wrongful death actions and survival actions.[34] The statute of limitations for a survival action under Virgin Islands law is limited to one year from the date of death.[35] The statute of limitations for a wrongful death action under Virgin Islands law is two years.[36]

We specifically addressed the survival action statute of limitations several weeks ago when we dismissed Personal Representative Cariveau's free-standing "Survival Claim."[37] The Legislature through Section 37(a) provides "[i]f a person entitled to bring an action dies before the expiration of the time limited for the commencement thereof, and the cause of action survives, an action may be commenced by his personal representatives, after the expiration of the time and within one year from his death."[38]

We dismissed with prejudice Personal Representative Cariveau's free-standing survival action as untimely on January 31, 2025.[39] We explained the Legislature through section 77 allows for a survival action limited through section 37(a) requiring a survival action to be brought within one year of death. We followed Chief Judge Molloy's reasoning in *Der Weer v. Hess Oil Virgin Islands Corporation* reading the survival statute under section 77 together with the one-year

limitations period in section 37(a).[40] We agreed with Chief Judge Molloy's reasoning section 37(a) has the effect of a sliding statute of limitations; if a person dies exactly two years to the date of his injury, section 37(a) extends the time to bring a survival claim for one more year, expanding the two-year statute of limitations from two years to three years. But, if a person dies on the same day as his injury, section 37(a) shortens the limitations period to one year from the date of death. Chief Judge Molloy explained while this "may seem unfair, it has to be seen in the light of the common law, which extinguished all tort claims upon death."[41] We also cited a 2023 case from the Superior Court of the Virgin Islands applying section 37(a)'s one-year limitation period to bar as untimely a survival action.[42] We concluded Personal Representative Cariveau's survival action is untimely and dismissed the survival action with prejudice.

Dr. Callwood and Nurse Freeman-Walter did not move to dismiss the civil rights claims against them as untimely. We previewed our concern with the timeliness of Personal Representative Cariveau's civil rights claims asserted through a survival action in our January 31, 2025 Memorandum.[43] We noted section 37(a) may govern Personal Representative Cariveau's civil rights claims but declined to decide issues not presented to us.[44]

**B. An unpleaded survival action is time barred.**

Accredo and Dr. Callwood and Nurse Freeman-Walter now move for judgment on the pleadings as to a survival claim we dismissed on January 31, 2025 and not included in the second amended Complaint. We are unsure why they moved to dismiss unpleaded claims. The redline version of Personal Representative Cariveau's first amended Complaint (attached to his second amended Complaint) deleted the "Survival Claims" and deleted citation to the survival action at section 77 from the Prayer for Relief.[45] The second amended Complaint seeks relief under the wrongful death action authorized by section 76.[46] On a Motion for judgment on the pleadings, we

accept as true all well *pleaded* allegations and draw all reasonable inferences in the non-moving party's favor.[47] Personal Representative Cariveau does not plead a survival action in the second amended Complaint. We do not see the issue.

Dr. Callwood and Nurse Freeman-Walter nevertheless reach to construe the second amended Complaint as asserting the constitutional claims through a survival action barred by the statute of limitations.[48] Personal Representative Cariveau takes the bait; he argues the survival claims are not time barred because the Fourteenth Amendment deliberate indifference claims have a two-year statute of limitations applied to section 1983 claims. He argues the civil rights claims are not "survival" claims under Virgin Islands law, but federal claims.[49] And he also argues section 1983 can "support an estate's survival claim."[50] He alternatively argues his deliberate indifference civil rights claims may be asserted through a wrongful death action.[51]

Accredo also appears to construe the second amended Complaint as asserting only a survival action, arguing the action is barred by the one-year statute of limitations and Personal Representative Cariveau cannot "circumvent" the statute of limitations by "creative[ly] pleading" a wrongful death action.[52] Personal Representative Cariveau responded the second amended Complaint "states valid wrongful death claims" against Accredo and the applicable statute of limitations "for all wrongful death claims arising under [Virgin Islands] law" is two years.[53] He argues his negligence claims against Accredo "do not allege survival claims; they both allege wrongful death causes of action."[54] Personal Representative Cariveau's position now appears to be asserting only a wrongful death negligence and gross negligence claim against Accredo having disavowed a survival action.

Personal Representative Cariveau is bound by his pleading. He does not allege a survival action. But he devoted over half of his opposition to challenging our January 31, 2025

memorandum and order dismissing his survival action as barred by the statute of limitations under section 37(a) of the Virgin Islands Code. Personal Representative Cariveau continues to assert the civil rights claims asserted on behalf of Mr. Vanausdal under section 1983 are subject to a two-year statute of limitations to which section 37(a) does not apply. He argues we "should not apply the section 37(a) tolling provision as if it were a statute of limitations," inviting us to revisit the issue.[55]

We considered and rejected the same arguments Personal Representative Cariveau made regarding the application of section 37(a) in our January 31, 2025 Memorandum and Order and dismissed his survival action. Personal Cariveau disagrees with our decision. He may exercise his appeal rights in due course, but his Opposition to Dr. Callwood and Nurse Freeman-Walter's motion is not a vehicle to relitigate the dismissal of survival claims as untimely as decided on January 31, 2025 without a timely motion to reconsider (now long overdue). We confirm, for clarity, we dismiss the unpleaded survival action.

### C. We grant in part and deny in part Accredo's Motion requiring we strike the punitive damages claim under the wrongful death statute.

Accredo argues both negligence claims asserted against it are barred by the one-year statute of limitations in section 37(a) applied to survival actions, we must dismiss the gross negligence claim, and we must strike the punitive damages claim. We agree only as to striking the punitive damages claim.

### 1. The Estate may proceed on negligence claims against Accredo.

Accredo argues Personal Representative Cariveau cannot "circumvent" the one-year statute of limitations applied to survival actions through "creative[ly] pleading" a wrongful death action. And, even if Personal Representative Cariveau now asserts a wrongful death claim, he does not meet the pleading requirements of section 76(e) requiring "all potential beneficiaries of a

11

recovery for wrongful death, including the decedent's estate, shall be identified in the complaint and their relationships to the decedent shall be alleged."[56] Personal Representative Cariveau asserted negligence claims against Accredo through a wrongful death action and disavowed a survival action. We disagree with Accredo the statute of limitations for a survival action applies to the wrongful death claims.

The Virgin Islands wrongful death statute imposes a pleading obligation on Personal Representative Cariveau to identify "all potential beneficiaries of a recovery for wrongful death, including the decedent's estate," in the complaint "and their relationships to the decedent."[57] Personal Representative Cariveau did not identify in the second amended Complaint all potential beneficiaries of a wrongful death action and the relationship of those beneficiaries to Mr. Vanausdal. Personal Representative Cariveau identified "the decedent's estate" as "the Estate of Craig Vanausdal, Deceased." We find Accredo's argument regarding pleading requirements as to the identification of the estate without merit.[58] But we agree Personal Representative Cariveau did not meet the pleading requirements required by the Virgin Islands Legislature in section 76(e) for pleading negligence claims on behalf of Mr. Vanausdal's beneficiaries, if any. Personal Representative Cariveau cannot proceed today on behalf of the beneficiaries subject to leave under our February 20, 2025 Order to identify the beneficiaries and their relationships to Mr. Vanausdal as required by the Legislature.[59]

**2. Personal Representative Cariveau can proceed on the gross negligence claim.**

Personal Representative Cariveau pleads claims for negligence and a separate gross negligence claim against Accredo. Accredo moves for judgment on the separate gross negligence claim. We allow this claim to proceed as to liability.

The Supreme Court of the Virgin Islands defined the elements of a claim for gross negligence six years ago: "(1) the defendant owed plaintiff a legal duty of care; (2) the defendant breached that duty in such a way as to demonstrate a wanton, reckless indifference to the risk of injury to plaintiff; (3) and the defendant's breach constituted the proximate cause of (4) damages to plaintiff." [60] The Supreme Court equated gross negligence with recklessness to "yiel[d] a simple, bright-line rule" allowing for an award of punitive damages "on a successful claim of gross negligence, but not on a claim of ordinary negligence." [61] "Gross negligence" under Virgin Islands law, means "wanton, reckless behavior demonstrating a conscious indifference to the health or safety of persons or property." [62]

Accredo argues Personal Representative Cariveau has not and cannot plead a claim for gross negligence because allegations of ordinary negligence of the second amended Complaint "contradict" allegations of gross negligence, suggesting ordinary negligence and gross negligence cannot be asserted in the same complaint. Federal Rule 8(d) allows for alternative pleading and a party may assert as many separate claims it has "regardless of consistency." [63] And, under Virgin Islands law, claims for ordinary negligence and gross negligence "each must be presented as an independent claim." [64]

Accredo then argues Personal Representative Cariveau did not plead the elements of a gross negligence claim consistent with the Virgin Islands Supreme Court's *Brathwaite* decision. [65] Accredo points to conclusory allegations without facts to support grossly negligent conduct and pleads nothing more than allegations of ordinary negligence.

We conclude Personal Representative Cariveau alleges sufficient facts to state a gross negligence claim against Accredo. Accredo has the burden to "clearly establish" ***no*** material issue of fact remains to be resolved and it is entitled to judgment as a matter of law. Personal Representative Cariveau alleges Accredo knew of Mr. Vanausdal's urgent need for his hemophilia medication, failed to ship the medicine to St. Thomas by overnight mail, took no action to provide the medication, and refused to provide the lifesaving medication because it had already mailed medication to Mr. Vanausdal's home in California on May 3, 2022.[66] These alleged facts, taken in the light most favorable to Personal Representative Cariveau as we must do today, sufficiently state a gross negligence claim based on Accredo's alleged wanton or reckless behavior demonstrating a conscious indifference to the health and safety of Mr. Vanausdal. Accredo may raise the issue on summary judgment after a fully developed record, but we cannot conclude based on the allegations Accredo is entitled to judgment as a matter of law.

### 3.  We strike the punitive damages demand.

Accredo also argues the Virgin Islands Legislature does not permit punitive damages in a wrongful death action. Personal Representative Cariveau concedes punitive damages are not "expressly mentioned" by the Legislature in section 76, but neither are punitive damages "mentioned in most other statutes" and we should read section 76 broadly to allow for an award of punitive damages.[67]

We combed Virgin Islands law; neither the Virgin Islands courts nor the District Court applying Virgin Islands law have allowed punitive damages in wrongful death actions since the 2001 amendments to the wrongful death and survival action statutes. Judge Donohue directly addressed this issue over ten years ago in *Der Weer v. Hess Oil Virgin Islands Corp.*[68] Judge

Donohue reasoned because wrongful death actions did not exist at common law, the type of recoverable damages are limited to those provided in the statute creating the cause of action.[69]

The Legislature through Section 76(e) defines the available damages to survivors of the decedent and to the estate of the decedent in wrongful death actions. Damages to the survivors include the value of lost support and services from the date of the decedent's injury to his death, surviving spouses may recover for loss of the decedent's companionship, protection, and for mental pain and suffering, children of the decedent may recover for loss of parental companionship, instruction, guidance, and for mental pain and suffering, each parent of a deceased child may recover for mental pain and suffering, and medical or funeral expenses may be recovered by a survivor who paid such costs.[70] The decedent's estate may recover loss of earning of the deceased from date of injury to date of death, loss of net accumulations beyond death reduced to present value, and medical or funeral expenses charged against the estate.[71]

Punitive damages are not among the type of damages allowed in wrongful death actions under Virgin Islands statute. Contrast the wrongful death statute with the survival action statute. Section 77 allowing for survival actions defines the damages recoverable to the estate of the deceased: "[w]hen the person entitled to maintain such an action dies before judgment, the damages recoverable for such injury may include loss of earnings and expenses sustained or incurred as a result of the injury may include damages for pain, suffering and disfigurement, ***or punitive or exemplary damages***, or prospective profits or earnings after the date of death."[72]

Personal Representative Cariveau argues we should "ignore" Judge Donohue's decision in *Der Weer*, arguing Judge Donohue's decision did not address a wrongful death action "rooted in gross negligence" and contends Judge Donohue did not rely on Virgin Islands precedent and

instead relied on "outdated and superseded" California law making *Der Weer* "wildly off base."[73] We disagree.

Personal Representative Cariveau cites authority from the Virgin Islands territorial courts analyzing the 2001 amendments by the Virgin Islands Legislature of the survival statute and wrongful death statute. Before 2001, a plaintiff could bring either a wrongful death action or a survival action, but not both.[74] The Virgin Islands Legislature amended both the wrongful death statute and the survival statute in 2001 to allow a plaintiff to plead and recover under both statutes in one cause of action.[75] But no one is disputing this; none of the Defendants argue Personal Representative Cariveau could not bring both a survival action and a wrongful death action.

The wrongful death statute and survival statute identify specific damages available under each action. The Virgin Islands Legislature did ***not*** include punitive damages as a type of damage available under the wrongful death statute but chose to include punitive damages as a type of damage available under the survival statute. Under applicable canons of statutory construction, the expression of one thing is the exclusion of another.[76] When the Virgin Islands Legislature omitted punitive damages from the wrongful death statute but included punitive damages in the neighboring survival statute, we "normally understand that difference in language to convey a difference in meaning."[77]

We decline to read the availability of punitive damages into the wrongful death statute where the Virgin Islands Legislature did not provide for them. A wrongful death action is a creature of statutory law, not common law. The action is defined by the Virgin Islands Legislature and it chose not to include punitive damages as a remedy included in the wrongful death statute. There is no authority from the Virgin Islands territorial courts or the District Court applying Virgin Islands law allowing punitive damages in a wrongful death action.

Personal Representative Cariveau's reliance on the Virgin Islands Supreme Court decision in *R.J. Reynolds Tobacco Co. v. Gerald* is misplaced.[78] In *R.J. Reynolds*, the Supreme Court of the Virgin Islands in 2022 considered appeals by R.J. Reynolds Tobacco Company from judgments entered in two tobacco products liability cases. Plaintiff Jevon Gerald, the son of the original plaintiff substituted after the death of his father, sued Reynolds for strict products liability, negligence, breach of implied warranty of merchantability, fraudulent concealment and misrepresentation, civil conspiracy, wrongful death, and survival claims and punitive damages for injuries from smoking cigarettes.[79] Another plaintiff, Christian Brown, the son of the original plaintiff substituted after the death of his mother, sued R.J. Reynolds for the same claims.[80] The Virgin Islands Superior Court entered judgment on the jury's award of $1 million in compensatory damages and $30 million in punitive damages in the *Gerald* case and $70 million in compensatory damages and $12.5 million in punitive damages in the *Brown* case. Reynolds moved to amend or alter the judgments and for a new trial. The Supreme Court of the Virgin Islands reduced the punitive damages award in *Gerald* and ordered a new trial on compensatory damages in *Brown*.

We disagree with Personal Representative Cariveau the Supreme Court "approved punitive damages in a wrongful death claim."[81] This conclusion is inaccurate. Plaintiff Gerald withdrew the wrongful death claim shortly before trial.[82] So, the award of punitive damages to Plaintiff Gerald could not have been under the wrongful death statute.[83]

Personal Representative Cariveau cites a sentence from the *R.J. Reynolds* decision for the proposition the Virgin Islands Supreme Court allows for punitive damages in wrongful death claims because a "state has a particularly high interest in adequately punishing conduct that causes death that is 'particularly egregious.'"[84] This reference is taken out of context. Aside from the fact the punitive damages affirmed in *R.J. Reynolds* did ***not*** arise in a wrongful death action, the

17

sentence from the *R.J. Reynolds* opinion excerpted by Personal Representative Cariveau does not support his argument. The portion cited by Personal Representative Cariveau is in the context of the Supreme Court's analysis of R.J. Reynolds's argument the amount of compensatory damages awarded cannot allow for a higher award of compensatory-to-punitive damages ratio. In its analysis surveying "other courts" in wrongful death cases, the Virgin Islands Supreme Court noted a California state court decision recognizing "a particularly high interest" in adequately punishing "particularly egregious" conduct causing death as a reason to justify a higher compensatory-to-punitive damages ratio. But the Virgin Islands Supreme Court ultimately decided the ratio of the compensatory-to-punitive damages awarded to Mr. Gerald was "still unusually high" and constitutionally excessive.[85] And, again, the punitive damages awarded to Mr. Gerald did not arise under the Virgin Islands wrongful death statute.

The Virgin Islands Supreme Court in *R.J. Reynolds* vacated the award of compensatory damages to Mr. Brown and remanded the case for a new trial.[86] In ordering a new trial on compensatory damages, the Supreme Court upheld the punitive damages awarded to Mr. Brown, who brought both a wrongful death ***and*** survival claim.[87] The presence of both a wrongful death and survival claim in *R.J. Reynolds* as to Mr. Brown makes *Reynolds* distinguishable from Personal Representative Cariveau's second amended Complaint, which does not assert a survival claim.

Finally, to the extent the *R.J. Reynolds* case is at all relevant, it supports a finding section 76 of the Virgin Islands wrongful death statute cannot be read to include an award of punitive damages because the Legislature did not allow for it. Defendant Reynolds argued in part the Virgin Islands Superior Court erred in awarding pre-judgment interest as a component of both Mr. Gerald's and Mr. Brown's judgments.[88] The Superior Court did not indicate the authority for its award of pre-judgment interest, and the Supreme Court construed the award as under the Virgin

18

Islands' pre-judgment interest statute allowing for interest on "all monies which have become due."[89] The Supreme Court concluded the pre-judgment interest statute applied only to contractual damages and declined to apply the statute broadly to include "intangible personal injury damages."[90] As additional support for its finding, the Supreme Court considered both the wrongful death statute under section 76 and the survival statute under section 77, neither of which allows for pre-judgment interest.[91] The Supreme Court considered the plain language of the wrongful death statute at section 76(e)(6) providing pre-judgment interest "*only* for economic damages that can be determined with specificity, and which would be proved at trial and already be included in the jury award" and the language of the survival statute at section 77, which "makes no mention of interest at all[,]" to conclude neither statute supported an award of pre-judgment interest.[92] Thus, the Supreme Court in *R.J. Reynolds* did not read into either the wrongful death statute or survival statute pre-judgment interest where the statutes do not explicitly authorize it. This careful language persuades us the Virgin Islands Supreme Court would not read an award of punitive damages into the wrongful death statute. We dismiss the Personal Representative's claims for punitive damages affecting the scope of his potential recovery but not altering his liability arguments.

### D.  We grant in part and deny in part Dr. Callwood and Nurse Freeman-Walter's Motion for judgment on the wrongful death civil rights claim.

Personal Representative Cariveau pleads section 1983 deliberate indifference claims against Dr. Callwood and Nurse Freeman-Walter through the Virgin Islands wrongful death statute.[93] Dr. Callwood and Nurse Freeman-Walker concede the question of whether a survivor may recover under section 1983 under a wrongful death statute "is an open, hotly disputed question."[94] But one they believe is not "the question" now before us although they refer to the issue in passing, including citing cases addressing the issue.[95] Dr. Callwood and Nurse Freeman-Walter posit because a wrongful death claim is "derivative" of the survival action, and the survival

19

action is barred by the statute of limitations, then the wrongful death action asserting section 1983 claims is time barred as well.[96] But we cannot simply disregard their largely undeveloped reference to the key issue: whether a personal representative can bring a civil rights wrongful death action in federal court under Virgin Islands law.

Personal Representative Cariveau faces the key question head on. He responds he may assert section 1983 deliberative indifference claims through a wrongful death action. He asks us to adopt the reasoning of the United States Courts of Appeals for the Fifth and Eleventh Circuits allowing section 1983 claims to be asserted by survivors (beyond the personal representative) through a wrongful death action.[97] Personal Representative Cariveau also cites cases from our district courts within our Court of Appeals allowing section 1983 claims to go forward in a wrongful death action.

We are mindful Dr. Callwood and Nurse Freeman-Walter are not specifically (or at least not primarily) moving for judgment based on whether Mr. Vanausdal's Estate (through Personal Representative Cariveau) can now proceed on a deliberative indifference civil rights claim through the wrongful death statute. But we today still address the admittedly difficult question for purposes of completeness given the nebulous nature of the shifting argument and to guide further discovery. We follow the reasoning from our colleagues allowing a wrongful death action to be asserted under section 1983 at this stage even though we are focusing solely on Personal Representative Cariveau's repeatedly admitting he only seeks recovery for the Estate and not identifying beneficiaries or other survivors.

### 1. Personal Representative Cariveau only pleads claims for the Estate and not for unidentified beneficiaries.

Personal Representative Cariveau did not identify in his current or two earlier complaints "all potential beneficiary of a recovery for wrongful death" and "their relationships to" Mr.

Vanausdal. We allow these claims only on behalf of Mr. Vanausdal's estate as properly pleaded. Dr. Callwood and Nurse Freeman-Walter are correct as the extent of the potential recovery based on the Personal Representative's repeated pleading deficiencies. He cannot recover for unpleaded parties or for expenses or "damages" beyond those specifically permitted by the Legislature. The Virgin Islands Legislature requires a wrongful death action to be brought by the "decedent's personal representative" who "shall recover" for the benefit of the decedent's survivors and the estate all damages provided in the statute.[98] The Legislature further provides "[a]ll potential beneficiaries of a recovery for wrongful death, including the decedent's estate, shall be identified in the complaint and their relationships to the decedent shall be alleged."[99]

Personal Representative Cariveau has not, to date after three complaints, pleaded a beneficiary. He does not satisfy the pleading requirements set by the Virgin Islands Legislature for anyone other than the Estate to recover. We now focus on whether the Estate can recover the identified expenses and lost income defined by the Legislature through a civil rights wrongful death claim.

### 2. Different courts of appeals offer contrasting views on allowing section 1983 claims through a state-created wrongful death action.

Our colleagues wrestle with the question of whether a decedent's estate or survivors may assert a claim to vindicate *their* rights and recover for their or the estate's losses through a wrongful death action based on a deprivation of the *decedent's* constitutional rights. We begin with the civil rights law. Congress provides a civil action for deprivation of federal rights under section 1983 for "the deprivation of any rights, privileges or immunities secured by the Constitution and laws" by persons acting under color of state law.[100] Section 1983 provides a mechanism for enforcing individual rights "secured" by federal law.[101] But what happens when the victim of an alleged constitutional wrong dies? Congress through section 1983 is silent on this issue, so courts turn to

section 1988 allowing for the application of state law as long the state law "is not inconsistent with the Constitution and laws of the United States."[102]

In survival actions, the Supreme Court directs federal courts to apply section 1988(a) as long as the state's survivor statute is not inconsistent with section 1983.[103] A claim for the deprivation of federal civil rights "does not die with the victim of the alleged constitutional wrong" as long as the relevant state law provides for a survival action.[104] And because a survival action is the vehicle to assert claims belonging to the decedent, courts look to state survival statutes. Whether this reasoning applies to wrongful death actions has created a division in the courts because, as discussed above, a wrongful death action is meant to benefit the beneficiaries of the decedent to compensate them for their loss resulting from the decedent's death.

Our Court of Appeals has not directly addressed whether a section 1983 claim may be asserted through a wrongful death action. Our Court of Appeals over fifty years ago in *O'Malley v. Brierley* recognized a general rule of standing "a litigant may only assert his own constitutional rights or immunities" and "one cannot sue for the deprivation of another's civil rights."[105] But the *O'Malley* analysis did not arise in the context of an estate's personal representative seeking recovery through a wrongful death action or a survival action. In *O'Malley*, two Roman Catholic priests sued the superintendent of a Pennsylvania prison under section 1983 after prison officials withdrew permission for the priests to conduct religious services and counseling in the prison. The priests sued the prison's superintendent claiming, in part, they had a First Amendment right to enter the prison so the incarcerated persons may exercise their right to religious freedom.[106] Our Court of Appeals concluded generally the priests did not have standing to assert the constitutional rights of the incarcerated persons.[107] So, our Court of Appeals's *O'Malley* standing analysis does not automatically apply to deprive standing for an estate to pursue wrongful death claims when

22

the estate pleads a direct financial injury (such as paying funeral expenses or lost income before death) caused by a third party's deliberative indifference towards a pretrial detainee. The priests in *O'Malley* did not suffer a loss and plainly lacked standing; they could not visit incarcerated persons. An estate, by contrast, may suffer financial loss in paying funeral and end-of-life medical expenses as well as the loss of the decedent's income (which presumably would be an estate asset) caused by the harm.

### *Courts of appeals allowing the wrongful death civil rights claim.*

Other Courts of Appeals have looked at whether a section 1983 civil rights claim may be asserted in a wrongful death action. The United States Court of Appeals for the Fifth Circuit's 1961 decision in *Brazier v. Cherry* appears to be the leading decision on the application of a state's wrongful death statute to a section 1983 claim.[108] A widow alleged Georgia police officers beat her husband to death in violation of his civil rights and asserted claims under section 1983 seeking damages to compensate the estate for injuries incurred by her deceased husband as well as her own compensatory damages she suffered from her husband's death.[109] The district court dismissed the widow's claims and she appealed. The court of appeals addressed whether "death resulting from violation of the Civil Rights Statutes gives rise to a federally enforceable claim for damages sustained by the victim during his lifetime, by his survivors, or both."[110] The court of appeals concluded the widow had standing and held section 1988 incorporated Georgia's wrongful death and survival statutes to provide a remedy to the widow for her claims.[111]

The Court of Appeals for the Fifth Circuit reasoned Congress intended section 1983 to have "broad and sweeping aims" to "protect the life of the living from the hazard of death caused by unconstitutional deprivations of civil rights."[112] The court of appeals reasoned Congress, through section 1988, adopted "the currently effective state law on the general right of survival"

which serves to "fill the gap" when civil rights statutes do not provide "suitable remedies" as long as the state law is "not inconsistent with the Constitution and laws of the United States."[113] The court concluded section 1988 "declares a simple, direct, abbreviated test: what is needed in the particular case under scrutiny to make the civil rights statutes fully effective? The answer to that inquiry is then matched against (a) federal law and if it is found to be wanting the court must look to (b) state law currently in effect. To whatever extent (b) helps, it is automatically available, not because it is procedure rather than substance, but because Congress says so."[114]

The court did not differentiate between a survival action or a wrongful death action because "[t]o make the policy of the Civil Rights Statutes fully effectual, regard has to be taken to both classes of victims."[115] The court of appeals reversed the district court, and allowed the widow to proceed on her claims.[116]

The Court of Appeals for the Fifth Circuit returned twenty years later and applied *Brazier* to claims of a mother seeking to recover for her own injuries arising from the wrongful death of her son. In *Rhyne v. Henderson County*, a mother sued a Texas county and its sheriff under section 1983 for failing to provide reasonable medical care to her son who died by suicide in jail.[117] The mother did not seek to recover as the representative of her son's estate for the injuries he suffered and instead sought recovery for her own injuries arising from the wrongful death of her son.[118] The mother did not open an administration of her son's estate and she did not bring the action in her representative capacity, making the mother different from the widow in *Brazier*.

The Court of Appeals recognized "[m]uch of *Brazier's* discussion concerned the survival of the *decedent's* claim, as opposed to the widow's right to recover for her own injuries arising out of her husband's death" but applied *Brazier* to the mother's right to recover for her own injuries for the wrongful death of her son.[119] The court rejected the County's argument the mother did not

have standing unless she could prove the County intended to deprive her of her familial association with her son in adopting the policies leading to her son's death.[120] The court recognized the strength of the County's argument to allow a wrongful death claim to proceed "arguably create new causes of action and therefore ought not to be incorporated by [section] 1988" but concluded the Texas wrongful death statute provided the mother with a right to recover for her son's wrongful death and to recover for her injuries caused by her son's death.[121] The court held the mother had standing to recover for her injuries arising from the wrongful death of her son as well as the right to recover for her son's injuries through a survival action because Texas law allowed for both wrongful death and survival actions.[122] The court confirmed "our decisions allow recovery by [mother of deceased] for her injury caused by the state's deprivation of her son's constitutionally secured liberty interests."[123]

And then four years ago, the same Court of Appeals again applied *Brazier* to allow the parents of an adult child who died in a Texas county hospital bring a wrongful death action (and survival action) against the state actors.[124] The court held "as incorporated through [section] 1988, civil rights plaintiffs in Texas may recover for their own injuries and the injuries of a deceased person resulting from the constitutional violations of government actors if the plaintiffs are the surviving spouse, children, parents, heirs, legal representatives, or estate of the deceased."[125]

The Court of Appeals for the Eleventh Circuit agrees. In *Carringer v. Rodgers*, the Court of Appeals for the Eleventh Circuit considered whether the mother of an adult son murdered by his police officer wife with her service revolver had standing to bring a wrongful death action under Georgia law.[126] The court applied *Brazier*'s holding Georgia's wrongful death statute is incorporated into federal law under section 1988 and held the mother had standing to assert a section 1983 claim for the wrongful death of her son in violation of his constitutional rights.[127]

25

These two courts of appeals allow wrongful death actions under section 1983. The Court of Appeals for the Fifth Circuit rejected the argument wrongful death statutes, unlike survival actions, create new causes of action under section 1983 and should not be incorporated by section 1988.[128] The court of appeals in *Brazier* reasoned a section 1983 wrongful death action should be allowed because "it defies history to conclude that Congress purposely meant to assure to the living freedom from such unconstitutional deprivations, but that, with like precision, it meant to withdraw the protection of civil rights statutes against the peril of death. The policy of the law and the legislative aim was certainly to protect the security of life and limb as well as property against these actions. Violent injury that would kill was not less prohibited than violence which would cripple."[129] Under the Court of Appeals for the Fifth Circuit's position, this is a question of an adequate remedy for the violation of a federal right, not the creation of a substantive right.[130]

### *Other courts of appeals do not allow the wrongful death civil rights claim.*

Other courts of appeals take a different view.[131] In *Andrews v. Neer*, the daughter of a man who died as an involuntary patient in a Missouri state mental health facility sued state actors under section 1983 for excessive force causing her father's death.[132] The daughter, who had ***not*** been appointed as personal representative of her deceased father, sought damages on behalf of her father for the injuries he suffered resulting from the alleged unconstitutional use of force.[133] The case went to trial and the jury returned a verdict in favor of the daughter, awarding damages to the daughter for father's injuries ***and*** her own injuries. The trial court vacated the award of damages to the daughter, finding damages are limited to those suffered by her father only and section 1983 did not incorporate Missouri's wrongful death remedies to allow daughter to recover damages for her own injuries. Both the state actors and the daughter appealed.

26

The Court of Appeals for the Eighth Circuit concluded Missouri's survival statute did not apply because the statute allowed a cause of action for personal injuries "other than those resulting in death."[134] The court specifically rejected the *Brazier* analysis and holding. The court reasoned allowing the daughter to recover under the wrongful death statute for her injuries would "place into the hands of the state the decision as to allocation of the recovery in a [section] 1983 case, and indeed, whether there can be any recovery at all."[135] To allow the measure of damages to be defined by Missouri's wrongful death statute would "impermissibly broaden the types of injuries for which Congress intended recovery to be available under [section] 1983's authorization of liability 'to the party injured.'"[136] The court refused to allow the daughter—who had not brought a separate claim for injury to her own constitutional rights or a supplemental state law wrongful death claim—to "shoehorn recovery available to her under such separate claims into the recovery she may receive under [section] 1983 for her father's injuries."[137] So, Missouri's wrongful death statute provided the only remedy to the daughter even if she had been appointed personal representative of her deceased father.[138] The court of appeals affirmed the trial court's order vacating damages awarded to the daughter for her own injury.

In *Berry v. City of Muskogee*, relied on by the Court of Appeals for the Eighth Circuit in *Andrews*, the widow of an incarcerated man murdered by prisoners in an Oklahoma city jail sued state actors on behalf of herself and her children and as the personal representative of the estate of her deceased husband asserting both a survival action and wrongful death action.[139] The trial court instructed the jury Oklahoma's wrongful death statute provided the measure of damages to the widow and her children; the jury returned a verdict in favor of the widow and awarded her damages.[140] The City appealed, arguing Oklahoma's survival statute is the proper measure of damages not its wrongful death statute.[141]

27

The court framed the issue as whether damages in a section 1983 action in which death occurs are limited to the damages recoverable under Oklahoma's survival statute only, available under Oklahoma's survival statute **and** Oklahoma's wrongful death action, or "determined by some federal standard either as a survival or wrongful death-type action not defined or limited by state law."[142] The court concluded "supplementing a state survival action with a state wrongful death action does not satisfy the criteria of [section] 1988 for borrowing state law" and the wrongful death statutes are "not suitable to carry out the full effects intended for [section] 1983 cases ending in death of the victim."[143] The court, examining but rejecting the *Brazier* decision, held "federal courts must fashion a federal remedy to be applied" to a section 1983 death case which "should be a survival action, brought by the estate of the deceased victim in accord with [section] 1983's express statement that the liability is 'to the party injured.'"[144] The court vacated the judgment of the trial court and remanded for a new trial.

The court of appeals's decisions in *Berry* and *Andrews* stand in direct contrast with other courts of appeals's decisions in *Brazier* and *Carringer*.

### Our Circuit colleagues have differing views on allowing a wrongful death civil rights claim.

There is a split among the district courts in our Circuit on asserting a wrongful death action for the decedent's constitutional claim under section 1983. Our research confirmed cases allowing claims to recover damages on a wrongful death theory under section 1983 and those cases not allowing these claims after relying primarily on our Court of Appeals's standing analysis relating to the priests' claims of access to incarcerated persons in *O'Malley v. Brierley*.[145]

### Decisions allowing wrongful death actions asserting section 1983 claims.

Judge Colville in the Western District of Pennsylvania offered his analysis a couple of months ago in *Gallo v. Weaver*.[146] Louis Gallo, as the administrator of the estate of Anthony Gallo,

sued a Pennsylvania State Trooper for excessive force in shooting and killing Anthony. The case went to trial and the jury returned a verdict in Administrator Gallo's survival action and wrongful death claim. The state actor moved post-trial for a new trial on any remaining survival claim because recovery under a wrongful death is not cognizable under section 1983, is barred by sovereign immunity, and admitted testimony relevant only to the wrongful death claim tainted consideration of the survival claim.[147] Judge Colville recognized a split among the district courts in this Circuit, but concluded a plaintiff may pursue and recover damages on a wrongful death theory on a section 1983 claim consistent with Judge Slomsky's decision in *Price v. Steinmetz* and on Judge Gibson's decision in *Maldet v. Johnstown Police Department*.[148]

In *Maldet*, the administratrix of an estate asserted wrongful death and survival act claims asserting civil rights violations causing the death of the decedent.[149] The Defendant City and police officer moved to dismiss section 1983 claims under both the wrongful death and survival acts arguing Pennsylvania's Political Subdivision Tort Claims Act barred the claims even where the alleged wrongful conduct is premised on violation of federal constitutional rights.[150] Judge Gibson denied the motion to dismiss, reasoning Pennsylvania's wrongful death and survival statutes are "vehicles to bring claims for redress, and not substantive claims in and of themselves" and applying the Political Subdivision Tort Claims Act to bar section 1983 claims brought through Pennsylvania's wrongful death and survival actions is "contrary to the aims of the Civil Rights Act."[151] Judge Gibson, relying on the Court of Appeals for the Fifth Circuit's decision in *Brazier*, reasoned if he dismissed the section 1983 claims, "then Mr. Maldet's civil rights could never be vindicated" which "seems to be an improper result, given that Mr. Maldet himself—had he survived—could have brought [section] 1983 claims in his own right" and "[t]he purpose of

[section] 1983—to redress civil rights violations—is frustrated if vindication of an individual's federal civil rights depends on that individual surviving the alleged violations."[152]

Judge Slomsky, relying on *Maldet*, denied a motion brought by a Pennsylvania State Trooper to dismiss an administratrix's civil rights violations, wrongful death, and survival actions arising from the assassination of decedent after State Police allegedly revealed his role as a confidential informant.[153] The administratrix brought the wrongful death action to recover damages for the decedent's minor daughter.[154] The parties agreed the wrongful death and survival actions were not being brought as independent claims but "merely vehicles for asserting [section] 1983 claims and providing a remedy for this violation of federal law."[155] The State Trooper moved to dismiss the wrongful death claim as barred by sovereign immunity. Judge Slomsky denied the motion, relying on *Maldet* and *Brazier*. He reasoned the purpose of section 1983 would be frustrated if it depended on the survival of the individual bringing the claim. Section 1983 does not create a substantive right, but a vehicle through which a federal right may be vindicated and which assures a remedy.[156]

Several judges have looked to Judge Stengel's 2014 decision in *Moyer v. Berks Heim Nursing Home* when analyzing whether to allow wrongful death claims asserting section 1983 claims to proceed into discovery.[157] In *Moyer*, two administrators of their mother's estate brought wrongful death and survival actions against a nursing home and County through section 1983. The nursing home and County moved to dismiss the wrongful death claim arguing a civil rights violation cannot serve as the basis of a state wrongful death action. Judge Stengel denied the motion to dismiss. Judge Stengel recognized a wrongful death action asserting a section 1983 claim "would appear to conflict with" our Court of Appeals's decision in *O'Malley* "because plaintiffs would be allowed to recover damages based on the violation of their mother's civil rights."[158] But

30

Judge Stengel recognized the split among the Courts of Appeals and within our Circuit and denied the motion at the early stage of the litigation.[159] He also reasoned the only damages recoverable under Pennsylvania's wrongful death claim are funeral expenses, and even those damages would be recovered under the Court of Appeals for the Eighth Circuit's *Andrews* decision and the Court of Appeals for the Tenth Circuit's *Berry* decision.[160]

### Decisions disallowing wrongful death civil rights claims.

Several of our colleagues have found no basis to allow wrongful death actions asserting section 1983 claims. Two years ago, Judge Pratter granted post-discovery summary judgment and dismissed the wrongful death action asserting section 1983 claims brought by a daughter, the administratrix of her mother's estate. Judge Pratter concluded, as a matter of law, a wrongful death action is a new cause of action allowing the family members of the deceased to vindicate ***their*** rights, not the rights of the decedent.[161] Judge Pratter reasoned this distinction is "critical" to the section 1983 analysis because our Court of Appeals's decision in *O'Malley* over fifty years ago required her to find the decedent's daughter lacked standing to enforce her late mother's civil rights.[162]

Judge Pratter recognized the dispute among the district courts in our Circuit regarding the extent to which *O'Malley* is controlling in wrongful death actions asserting section 1983 claims.[163] But she found Judge Ludwig's 2012 analysis in *Massey v. Fair Acres Geriatric Center* persuasive and consistent with our Court of Appeals's *O'Malley* decision from 1973.[164] In *Massey*, Judge Ludwig on summary judgment dismissed the wrongful death claim of a son, the administrator of his mother's estate, asserting section 1983 claims.[165] Judge Ludwig reasoned the wrongful death action asserted the mother's civil rights under section 1983 "in the guise of" a state law claim for wrongful death to avoid an immunity defense and rejected the claim because it "conflates the

provisions of state statutes that set out different remedies to redress different injuries for different claimants."[166] Judge Ludwig concluded Pennsylvania's wrongful death statute is designed to create a remedy for specified beneficiaries for damages caused to them by the decedent's death.[167]

Judge Pratter agreed the administratrix could not assert a section 1983 wrongful death action to vindicate her mother's civil rights and disagreed with Judge Stengel's reasoning in *Moyer* and Judge Caputo's reasoning in *Becker*. Both Judges Pratter and Ludwig reached these decisions on a summary judgment record. We are not there yet. We are also not persuaded *O'Malley*'s rule on standing for persons applies to bar an estate seeking recovery of funeral and end-of-life medical expenses and the limited income the decedent may have had in his bank account at death but for the alleged deliberative indifference.

### 3. Personal Representative Cariveau may proceed on his pleaded wrongful death civil rights claim on behalf of the Estate.

We are persuaded by the reasoning of decisions allowing a wrongful death action asserting a section 1983 deliberative indifference claim to proceed through discovery on the narrow facts presented today on behalf of an estate seeking recovery of statutorily authorized expenses and lost income.

Congress intended section 1983 "to provide a remedy, to be broadly construed, against all forms of official violation of federally protected rights."[168] If Mr. Vanausdal had survived the events in May 2022, he could have brought his own action. We do not agree the remedial purposes of section 1983 are served by extinguishing a wrongful death action by the fact of Mr. Vanausdal's death shortly after his detention allegedly caused by Dr. Callwood's and Nurse Freeman-Walter's deliberate indifference to his medical condition. We appreciate wrongful death is a separate cause of action than a survival claim based on the decedent's personal injury. But we do not see the distinction between other "separate" causes of action, such as negligence, which are able to

proceed through a wrongful death action. The fact remains, either in negligence or in deliberate indifference, the Estate suffered damages in the form of statutorily permitted funeral and medical expenses charged to the Estate or paid on behalf of decedent and Mr. Vanausdal's lost earnings during his pretrial detention in the St. Thomas Jail. We see no reason to find the Legislature would allow the pleaded Estate's recovery against a pharmacy like Accredo in negligence but not against the state actors for deliberative indifference the Personal Representative for the Estate alleges both caused the harm and eventual death. Denying the Estate (as pleaded today) a recovery for deliberative indifference by the medical professionals allegedly leading to Mr. Vanausdal's death is not consistent with the remedial purposes of the civil rights law. We find the better rule is to allow the Estate to proceed on its claim for out of pocket expenses it incurred for funeral and end-of-life medical care and lost income for twelve days as defined by the Legislature in its wrongful death statute. The Estate allegedly suffered concrete harm.

We find persuasive the court of appeals's reasoning in *Brazier* "it defies history to conclude that Congress purposely meant to assure to the living freedom from such unconstitutional deprivations, but that, with like precision, it meant to withdraw the protection of the civil rights statutes against the peril of death."[169] We cannot agree the survival of a civil rights violation depends on the whether the alleged victim of a constitutional deprivation lives or dies.

We agree in large part with Judge Stengel's analysis in *Moyer* and the thoughtful reasoning following Judge Stengel by Judge Colville in *Gallo*, Judge Caputo in *Becker*, Judge Slomsky in *Price*, and Judge Gibson in *Maldet*, allowing the wrongful death civil rights claim to go forward through which a violation of a federal civil right may be vindicated.

### III.    Conclusion

We grant in part, and deny in part, the Motions for judgment on the pleadings. Personal Representative Cariveau's survival action is barred by the statute of limitations in section 37 of the Virgin Islands Code as we held on January 31, 2023. We deny Accredo's motion for judgment on the wrongful death action as barred by the statute of limitations but grant its motion seeking to strike punitive damages as not provided by the wrongful death statute. We are not persuaded by Dr. Callwood's and Nurse Freeman-Walter's argument the Estate cannot proceed on as wrongful death civil rights claim.

---

[1] ECF 108 ¶ 13.

[2] *Id.* ¶¶ 13-14.

[3] *Id.* ¶¶ 15, 20, 21.

[4] *Id.* ¶ 24.

[5] *Id.* ¶ 28.

[6] *Id.* ¶¶ 7, 22, 25. Personal Representative Cariveau identified Nurse Freeman-Walter as "Welma" Freeman-Walter. ECF 108. Nurse Freeman-Walter identifies herself as "Velma" Freeman-Walter. *See e.g.* ECF 110. We direct counsel to confer as to a stipulation to clarify the correct name of Nurse Freeman-Walter in today's Order.

[7] ECF 108 ¶¶ 26-34, 37-50. A fulsome recitation of the alleged facts and timeline of Mr. Vanausdal's detention in the St. Thomas Jail is detailed in our January 31, 2025 Memorandum at ECF 74. *Cariveau v. Callwood,* No. 24-29, 2025 WL 357757 (D.V.I. Jan. 31, 2025).

[8] ECF 108 ¶¶ 33-36, 60-63.

[9] *Id.* ¶ 56.

[10] ECF 1, 9.

[11] A wrongful death action "shall be brought by the decedent's personal representative, who shall recover for the benefit of the decedent's survivors and estate all damages, as specified in this section, caused by the injury resulting in death. When a personal injury to the decedent results in his death, any action for the personal injury shall survive, whether or not filed at the time of death,

and shall not abate. ..." 5 V.I.C. § 76(d). "All potential beneficiaries of a wrongful death, including the decedent's estate, shall be identified in the complaint and their relationships to the decedent shall be alleged." *Id.*§ 76(e).

[12] ECF 9. Personal Representative Cariveau also asserted constitutional claims against the Jail Warden, the Director of the Virgin Islands Bureau of Corrections, and the Governor of the Virgin Islands.

[13] ECFs 36, 38. The Warden did not move to dismiss the claims asserted against him.

[14] ECF 74. We granted the motion to dismiss of the Governor and Director of the Bureau of Corrections without prejudice as Personal Representative Cariveau did not plead a sufficient basis for their supervisory liability. *See* ECF 75.

[15] ECF 102. We dismissed the Warden on consent after our initial pretrial conference. *Id.*

[16] ECF 108. Personal Representative Cariveau elected not to pursue claims against the Governor, Director, and Warden (having been earlier dismissed on consent) in the second amended Complaint. *Id.*

[17] ECF 108.

[18] ECFs 110, 11, 112, 117, 118. Accredo, Dr. Callwood, and Nurse Freeman-Walter answered the second amended Complaint. ECFs 109, 114.

[19] ECFs 117, 118.

[20] ECF 120, 124. Dr. Callwood and Nurse Freeman-Walter filed a reply in support of their motion for judgment on the pleadings. *See* ECF 123. Accredo also filed a reply in support if its motion for judgment on the pleadings. *See* ECF 127.

[21] *Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 195 (3d Cir. 2019) (quoting *In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125, 133 n.6 (3d Cir. 2016)).

[22] *Michigan Cent. R.R. Co. v. Vreeland*, 227 U.S. 59, 67 (1913).

[23] A wrongful death action, like a survival action, also did not exist at common law. *Der Weer v. Hess Oil Virgin Islands Corp.*, 61 V.I. 87, 100-01 (V.I. Super. Ct. 2014).

[24] *Der Weer*, 61 V.I. at 105-06 (V.I. Super. Ct. 2014).
[25] 5 V.I.C. § 77.

[26] *Id.* §76(c).

[27] *Id.* § 76(a).

[28] *Id.* § 76(d) (emphasis added). A "survivor" is defined as "the decedent's spouse, children, parents, and, when partly or wholly dependent on the decedent for support or services, any blood relatives and adoptive brothers and sisters." *Id.* § 76(b)(1). The wrongful death statute delineates the damages which may be awarded to "each survivor" and  the "decedent's estate." *Id.* § 76(e).

[29] *Der Weer*, 61 V.I. at 110.

[30] *Id.* at 101 (citation omitted).

[31] 5 V.I.C. § 76(d).

[32] *Der Weer*, 61 V.I. at 102-03 (footnote omitted).

[33] Personal Representative Cariveau alleges Accredo's negligence and the deliberate indifference of Dr. Callwood and Nurse Freeman-Walter "caus[ed] damages to [Mr. Vanausdal's] survivors" and he seeks damages "on behalf of all those surviving members of his family entitled to recovery" under section 76. ECF 108 ¶¶ 92, 131, 166, 177, and Prayer for Relief. Personal Representative Cariveau asserted a wrongful death action in the Complaint on May 4, 2024 and the amended Complaint adding Accredo as a defendant on May 15, 2024. *See* ECF 1 ¶¶ 114, 150, 186, 222, 258, 269, and Prayer for Relief (original complaint asserting claims against Dr. Callwood, Nurse Freeman-Walter, and state actors only); ECF 9 ¶¶ 105, 144, 180, 216, 252, 288, 299, and Prayer for Relief (amended Complaint adding Accredo entities as defendants).

[34] *Jeremiah v. Virgin Islands Dep't of Human Servs.*, 77 V.I. 310, 317 (V.I. Super. Ct. 2023) (quoting *Der Weer*, 61 V.I. at 115).

[35] 5 V.I.C. § 37(a).

[36] 31 V.I.C. § 31(a)(5)(A); *Martinez v. Hess Oil Virgin Islands Corp.*, 69 V.I. 519, 523 (V.I. Super. Ct. 2018).

[37] *Cariveau v. Callwood*, No. 24-29, 2025 WL 357757 (D.V.I. Jan. 31, 2025).

[38] 5 V.I.C. § 37(a).

[39] *Cariveau*, 2025 WL 357757 at *19-*20.

[40] *Id.* (citing *Der Weer*, 61 V.I. at 116).

[41] *Der Weer*, 61 V.I. at 116.
[42] *See Jeremiah*, 77 V.I. at 317-18.

[43] *Cariveau*, 2025 WL 357757 at *20, n. 241.

[44] *Id.*

---

[45] *See* ECF 108-2.

[46] ECF 108 ¶¶ 92, 131, 166, 177, and Prayer for Relief.

[47] *Twin City Fire Ins. Co. v. Glenn O. Hawbaker, Inc.*, 118 F.4th 567, 573 (3d Cir. 2024) (citations omitted).

[48] ECF 111 at 4, n. 1.

[49] ECF 120 at 3-6.

[50] *Id.* at 10.

[51] *Id.* at 13-17.

[52] ECF 118 at 5-6.

[53] ECF 124 at 1.

[54] *Id.* at 3.

[55] ECF 120 at 6-10.

[56] ECF 127 at 3 (quoting 5 V.I.C. § 76(e)).

[57] 5 V.I.C. § 76(e).

[58] ECF 108 ¶ 5.

[59] We are now addressing negligence claims asserted through a ***wrongful death*** action. Personal Representative Cariveau alleges Accredo's negligence resulted in Mr. Vanausdal's death "causing damages to his survivors" under section 76. *See* ECF 108 ¶ 92, Prayer for Relief. A two-year statute of limitations applies to the wrongful death action.

[60] *Brathwaite v. Xavier*, 71 V.I. 1089, 1111 (V.I. 2019).

[61] *Id.* at 1108.

[62] *Id.* at 1110.

[63] *O'Reilly Plumbing and Constr., Inc. v. Lionsgate Disaster Relief, LLC*, No. 2019-24, 2024 WL 2774942, *10 (D.V.I. May 29, 2024) (quoting Fed. R. Civ. P. 8(d)(3)).

[64] *Bermudez v. Virgin Islands Port Auth.*, 76 V.I. 101, 106 (V.I. Super. Ct. 2022).

[65] ECF 127 at 4-5.

[66] ECF 108 ¶¶ 33-37, 60-63, 93-97.

[67] ECF 124 at 11.

[68] *Der Weer v. Hess Oil Virgin Islands Corp.*, 60 V.I. 91 (V.I. Super. Ct. 2014).

[69] *Id.* at 103-04.

[70] 5 V.I.C. § 76(e)(1)-(5).

[71] *Id.* § 76(e)(6)(a)-(b).

[72] *Id.* § 77 (emphasis added).

[73] ECF 124 at 6-7, 9.

[74] *Crawford v. Daly*, 55 V.I. 66, 72 (V.I. Super. Ct. 2010).

[75] *Id.* at 75 (citing 5 V.I.C. §§ 76, 77).

[76] *United States v. Nasir*, 17 F.4th 459, 471-72 (3d Cir. 2021).

[77] *Bittner v. United States*, 598 U.S. 85, 94 (2023) (analyzing two sections of the Bank Secrecy Act, rejecting the United States' argument the Court should infer Congress intended to apply a section authorizing per-account penalties for some willful violations to non-willful violations).

[78] 76 V.I. 656 (V.I. 2022).

[79] *Id.* at 673.

[80] *Id.* at 674.

[81] ECF 124 at 10-11.

[82] *Reynolds*, 76 V.I. at 673, n. 5.

[83] We also note "the juries were asked what amounts would compensate the estates of [Mr. Gerald's father] and [Mr. Brown's mother] for their 'pain, suffering, disfigurement, mental anguish, and the loss of enjoyment of life' during their lifetimes" for "the ***survival claims***" and "regarding the ***wrongful death claim***, the jury was asked what amount would compensate [Mr.] Brown for the 'pain, suffering, mental anguish, and loss of his mother's companionship, instruction and guidance he suffered as a result of his mother's illness and death." *Id.* at 737 n.53 (emphasis added). The Virgin Islands Supreme Court clearly referred to the two "survival claims" of Mr. Gerald and Mr. Brown but the Court only referred to the wrongful death claim of Mr. Brown, further confirmation Mr. Gerald withdrew the wrongful death claim.

---

[84] ECF 124 at 10-11 (citing *Reynolds*, 76 V.I. at 722-23).

[85] *Id.* at 725.

[86] *Id.* at 739.

[87] *Id.*

[88] *Id.* at 734.

[89] *Id.* (citing 11 V.I.C. § 951(a)(1)).

[90] *Id.* at 736-37.

[91] *Id.* at 737.

[92] *Id.*

[93] 42 U.S.C. § 1983.

[94] ECF 111 at 4-5.

[95] *Id. See also* MARTIN A. SCHWARTZ, SECTION 1983 LITIGATION: CLAIMS AND DEFENSES § 13.03 (Fourth Edition, 2025-1 Supp. 2010).

[96] We reject this "time barred" argument in its entirety. We did not dismiss the survival action on the merits. We concluded on January 31, 2025 Personal Representative Cariveau plausibly alleged deliberate indifference to Mr. Vanausdal's medical needs and denied Dr. Callwood and Nurse Freeman-Walter's motion to dismiss on this issue. Dr. Callwood and Nurse Freeman-Walter did not move to dismiss the section 1983 wrongful death claims as untimely as they do today.

[97] *Carringer v. Rodgers*, 331 F.3d 844 (11th Cir. 2003); *Brazier v. Cherry*, 293 F.2d 401 (5th Cir. 1961).

[98] 5 V.I.C. § 76(d).

[99] *Id.* § 76(e).

[100] Congress through Section 1983 provides in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted

unless a declaratory decree was violated or declaratory relief was unavailable. . . .." 42 U.S.C. § 1983.

[101] *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002).

[102] *Robertson v. Wegmann*, 436 U.S. 584, 588 (1978) (finding section 1983 "deficient" with regard to survivorship). Section 1988 provides: "The jurisdiction in civil and criminal matters conferred on the district courts ... for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause, and, if it is of a criminal nature, in the infliction of punishment on the party found guilty." 42 U.S.C. § 1988.

[103] *Robertson*, 436 U.S. at 588-89. In *Robertson*, the plaintiff Mr. Shaw sued a Louisiana district attorney under section 1983 for bad faith prosecution. Mr. Shaw died after he brought his action and shortly before trial. His death was ***not*** caused by the deprivation of rights sued upon. *Id.* at 594. The executor of his estate moved to be substituted for Mr. Shaw. The district court granted the motion and the defendant state actors moved to dismiss the action arguing Mr. Shaw's claims abated on his death. *Id.* at 586-87. Under Louisiana law, a plaintiff's action survived only in favor of a spouse, children, parents, or siblings and Mr. Shaw had none. Both the district court and the Court of Appeals in the Fifth Circuit concluded application, under section 1988, of Louisiana's survival act statute is inconsistent with the broad remedial purposes of section 1983. *Id.* at 587-88. The Supreme Court reversed, reasoning Louisiana's survival statute cannot be considered "inconsistent" with federal law "merely because the statute causes the plaintiff to lose the litigation." *Id.* at 593. The Court held "the fact [Mr.] Shaw was not survived by one of several close relatives should not itself be sufficient to cause the Louisiana survivorship provisions to be deemed 'inconsistent with the Constitution and laws of the United States'" as provided in section 1988. *Id.* at 593. The Court limited its holding as "a narrow one." *Id.* at 594. The Court in *Robertson* did not address wrongful death actions.

[104] *Baffa v. Black*, 481 F. Supp. 1083, 1085 (E.D. Pa. 1979) (quoting *Brazier v. Cherry*, 293 F.2d 401, 404 (5th Cir. 1961)).

[105] 477 F.2d 785, 789 (3d Cir. 1973) (citations omitted).

[106] *Id.* at 789.

[107] *Id.* at 789-90.

[108] MARTIN A. SCHWARTZ, SECTION 1983 LITIGATION: CLAIMS AND DEFENSES § 13.03[C].

[109] *Brazier*, 293 F.2d at 402-03 and n.1.

---

[110] *Id.* at 402.

[111] *Id.* at 408-09.

[112] *Id.* at 405.

[113] *Id.* at 407-08.

[114] *Id.* at 409.

[115] *Id.*

[116] *Id.*

[117] 973 F.2d 386 (5th Cir. 1992).

[118] *Id.* at 390.

[119] *Id.*

[120] *Id.* at 391.

[121] *Id.* The Texas wrongful death statute provides: "(a) An action to recover damages as provided by this subchapter is for the exclusive benefit of the surviving spouse, children, and parents of the deceased. (b) The surviving spouse, children, and parents of the deceased may bring the action or one or more of those individuals may bring the action for the benefit of all. (c) If none of the individuals entitled to bring an action have begun the action within three calendar months after the death of the injured individual, his executor or administrator shall bring and prosecute the action unless requested not to by all those individuals." TEX. CIV. PRAC. & REM. § 71.004.

[122] *Id.* at 390-91.

[123] *Id.* at 391.

[124] *De Paz v. Duane*, 858 F. App'x 734 (5th Cir. 2021).

[125] *Id.* at 737-38.

[126] 331 F.3d 844 (11th Cir. 2003).

[127] *Id.* at 847-50. The Court of Appeals for the Eleventh Circuit, deciding *Carringer* in 2003, considered the Fifth Circuit's *Brazier* decision binding precedent. *Id.* at 848 n.3. On October 1, 1981, Congress divided the Fifth Circuit and created a new circuit. Judicial districts in Mississippi, Louisiana, Texas, and the Canal Zone remained in the Fifth Circuit while judicial districts in Alabama, Georgia, and Florida became part of the newly created Eleventh Circuit. *See*

https://www.ca5.uscourts.gov/about-the-court/circuit-history/brief-history#:~:text=In%201981% 2C%20the%20Fifth%20Circuit, twelve%20to %20the %20Eleventh%20Circuit.

[128] *Rhyne*, 973 F.2d at 391.

[129] *Brazier*, 293 F.2d at 404.

[130] *Id.* at 409.

[131] We today highlight decisions of the Courts of Appeals from the Eighth and Tenth Circuits. But other circuit courts have also disallowed wrongful death actions based on civil rights violations to the decedent. For example, in *Claybrook v. Birchwell*, the Court of Appeals for the Sixth Circuit held only an estate's representative could bring a section 1983 claim but the decedent's children lacked standing to bring a wrongful death claim for their own injuries arising from the alleged violations of their deceased father's civil rights, explaining "[i]n the Sixth Circuit, a section 1983 cause of action is entirely personal to the direct victim of the alleged constitutional tort." 199 F.3d 350, 357 (6th Cir. 2000) (citations omitted). In *Orlowski v. Milwaukee County*, the Court of Appeals for the Seventh Circuit affirmed the dismissal of a father's due process claim asserted for his own injury from the loss of his son who died of a drug overdose while in the Milwaukee County House of Correction. 872 F.3d 417 (7th Cir. 2017), *cert. denied*, 584 U.S. 912 (2018). The Court of Appeals for the Seventh Circuit held it does not recognize a constitutional right to recover for the loss of companionship of an adult child when the relationship "is terminated as an incidental result of state action." *Id.* at 425-26.

[132] 253 F.3d 1052 (8th Cir. 2001).

[133] *Id.* at 1056-57.

[134] *Id.* at 1057.

[135] *Id.* at 1063-64.

[136] *Id.* at 1064 (first quoting *Berry v. City of Muskogee*, 900 F.2d 1489,1056 (10th Cir. 1990); then quoting 42 U.S.C. § 1983)).

[137] *Id.* at 1064.

[138] *Id.* Missouri's wrongful death statute provides: "[w]henever the death of a person results from any act, conduct, occurrence, transaction, or circumstance which, if death had not ensued, would have entitled such person to recover damages in respect thereof, the person or party who ... would have been liable if death had not ensued shall be liable in an action for damages, notwithstanding the death of the person injured, which damages may be sued for: (1) By the spouse or children or the surviving lineal descendants ..." MO. REV. STAT. § 537.080

[139] *Berry*, 900 F.2d at 1492.

[140] *Id.* at 1499-1501.

[141] *Id.* at 1500. Oklahoma's survival statute would "significantly reduce" the amount of damages available to the widow where the wrongful death statute would allow "virtually all recoveries to particular individuals." *Id.*

[142] *Id.* at 1501.

[143] *Id.* at 1505.

[144] *Id.* at 1506-07 (quoting 42 U.S.C. § 1983).

[145] Cases allowing a wrongful death civil rights claim include: *Gallo v. Weaver*, No. 19-1260, 2025 WL 563836 (W.D. Pa. Feb. 20, 2025), *appeal filed* No. 25-1443 (3d Cir. Mar. 12, 2025); *Harper v. Allegheny Cnty.*, No. 23-1433, 2024 WL 4151163 (W.D. Pa. July 10, 2024); *McAndrew v. Northumberland Cnty.*, No. 22-834, 2024 WL 184434 (M.D. Pa. Jan. 17, 2024); *Price v. Steinmetz*, No. 19-3225, 2020 WL 5039447 (E.D. Pa. Aug. 25, 2020); *Maldet v. Johnstown Police Dep't*, No. 19-325, 2019 WL 2435869 (W.D. Pa. June 11, 2019); *Becker v. Carbon Cnty.*, 177 F. Supp. 3d 841 (M.D. Pa. 2016); *DeJesus v. City of Lancaster*, No. 14-3477, 2015 WL 1230319 (E.D. Pa. Mar. 17, 2015); *Moyer v. Berks Heim Nursing Home*, No. 13-4497, 2014 WL 1096043 (E.D. Pa. Mar. 19, 2014); *Pahle v. Colebrookdale Twp.*, 227 F. Supp. 2d 361 (E.D. Pa. 2002).

Cases not allowing a wrongful death civil rights claim include *Beaty v. Delaware Cnty.* No. 21-1617, 2023 WL 5423020 (E.D. Pa. Aug. 10, 2023); *Alexander v. Fair Acres Geriatric Ctr.*, 678 F. Supp. 3d 639 (E.D. Pa. 2023); *Speakman v. Williams*, 440 F. Supp. 3d 376 (D. Del. 2020); *Massey v. Fair Acres Geriatric Ctr.*, 881 F. Supp. 2d 663 (E.D. Pa. 2012); *Heckenswiler v. McLaughlin*, No. 06-4151, 2008 WL 4442945 (E.D. Pa. Sept. 29, 2008).

[146] 2025 WL 563836 (W.D. Pa. Feb. 20, 2025). State Trooper Weaver appealed from the judgment against him, challenging whether the facts presented at trial established he violated the decedent's rights, whether he is entitled to qualify immunity, whether highly prejudicial evidence improperly admitted at trial entitles him to a new trial, and whether damages are unsupported by the record and are grossly excessive. It does not appear Trooper Weaver is specifically appealing the wrongful death issue. The appeal is currently in the briefing stage. *See Gallo v. Weaver*, Court of Appeals No. 24-1443.

[147] *Id.* at *40.

[148] *Id.* at *40-*41. Pennsylvania's General Assembly describes the wrongful death claim: "General rule—An action may be brought, under procedures prescribed by general rules, ***to recover damages for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another*** if no recovery for the same damages claimed in the wrongful death action ***was obtained by the injured individual during his lifetime*** and any prior actions for the same injuries are consolidated with the wrongful death claim so as to avoid a duplicate recovery." 42 PA. CONS. STAT. ANN. § 8301(a) (emphasis added). The action exists "only for the benefit of the spouse, children or parents of the deceased ..." *Id.* § 8301(b).

The Virgin Islands Legislature describes the wrongful death claim in a different way: "When the **death of a person is caused by the wrongful act, negligence**, default, or breach of contract or warranty of any person, ... **and the event would have entitled the person injured to maintain an action and recover damages if death had not ensued**, the person ... that would have been liable in damages if death had not ensued shall be liable for damages as specified in this section notwithstanding the death of the person injured ...." 5 V.I. § 76(c) (emphasis added). Both Pennsylvania's and the Virgin Islands' wrongful death statutes allow for the recovery of damages for the death of an individual caused by the wrongful or negligent acts of another accrued before the decedent's death.

[149] 2019 WL 2435869 (W.D. Pa. June 11, 2019).

[150] *Id.* at * 5.

[151] *Id.* at *7.

[152] *Id.* (citation omitted).

[153] *Price*, 2020 WL 5039447 at *1.

[154] *Id.* at *10.

[155] *Id.* at *10, n. 5.

[156] *Id.* at *11-*12.

[157] 2014 WL 1096043 (E.D. Pa. Mar. 20, 2014).

[158] *Id.* We do not share Judge Stengel's concern as to a conflict with our Court of Appeals' analysis in *O'Malley*. We see two different standing issues. Our Court of Appeals in *O'Malley* addressed priests' standing to claim injury because a correctional facility would not allow them to counsel and perform religious services in the facility. The facility affected the religious freedom of the incarcerated persons, not the priests. We face a much different situation: an estate's personal representative wants to recover the funeral and end-of-life medical expenses allowable for recovery under the Virgin Islands wrongful death statute arguing state actors exhibited deliberative indifference. The estate will presumably show these out-of-pocket expenses. The estate suffered concrete injury in expenses it would not have incurred (or income it lost for twelve days) except for the alleged conduct of the state actors.

[159] *Id.* at *3-*4.

[160] *Id.* at *4. Judge Stengel's decision in *Moyer* continues to serve as the authority for allowing a wrongful death action asserting a section 1983 claim. Last year, Chief Judge Brann in *McAndrews v. Northumberland County* denied a motion brought by Northumberland County and Corrections Officers to dismiss claims brought by a father as the administrator of the estate of his daughter

who died by suicide in the Northumberland County Jail. 2024 WL 184434 at * 1. The defendants argued Pennsylvania's Political Subdivision Tort Claims Act barred the wrongful death and survival actions. Because neither the Supreme Court nor our Court of Appeals have decided whether a section 1983 may be used by survivors when the decedent's death resulted from a constitutional violation, Chief Judge Brann followed Judge Stengel's decision in *Moyer* and allowed the claims to proceed to be renewed after discovery. *Id.* at *5.

[161] *Alexander*, 678 F. Supp. 3d at 648.

[162] *Id.*

[163] *Id.* Judge Pratter cited Judge Stengel's decision in *Moyer* and Judge Caputo's decision in *Becker v. Carbon County*, allowing a wrongful death action asserting section 1983 claims to go forward relying on Judge Stengel's *Moyer* decision. *Id.* (citing *Becker*, 177 F. Supp. 3d at 852-53).

[164] *Alexander*, 678 F. Supp. 3d at 648.

[165] *Massey*, 881 F. Supp. 2d at 669.

[166] *Id.*

[167] *Id.* at 669-70.

[168] *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 700-701 (1978).

[169] *Brazier*, 293 F.2d at 404.